**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 07-0260-PHX-DGC |
| Plaintiff, | )<br>) | |
| | ) | **ORDER** |
| vs. | )<br>) | |
| David Steven Goldfarb, et al., | )<br>) | |
| Defendants. | )<br>) | |

Defendant David Goldfarb has filed a Motion to Dismiss for Prejudicial Pre-indictment Delay. Dkt. #531. The Government has responded and Defendant has replied. Dkt. ##578, 599. The Court held an evidentiary hearing on October 8, 2008. For reasons set forth below, the Court will deny the motion to dismiss.

**I.    Legal Standard.**

The Fifth Amendment guarantees that defendants will not be denied due process as a result of pre-indictment delay. *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007). "Generally, any delay between the commission of a crime and an indictment is limited by the statute of limitations." *Id.* "In some circumstances, however, 'the Due Process Clause requires dismissal of an indictment brought within the [statute of] limitations period.'" *Id.* (quoting *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992)). The Ninth Circuit has established a two-part test for determining when an indictment must be dismissed for pre-indictment delay.

1   First, the defendant must prove "actual, non-speculative prejudice from the delay."

2   *Id.* To satisfy this requirement, the defendant must provide "proof that demonstrates exactly

3   how the loss of evidence or witnesses was prejudicial." *United States v. Barken*, 412 F.3d

4   1131, 1134 (9th Cir. 2005). "The defendant's burden to show actual prejudice is heavy and

5   is rarely met." *Id.* "'Courts apply the actual prejudice test stringently.'" *United States v.*

6   *Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) (quoting *United States v. Butz*, 982 F.2d 1378,

7   1380 (9th Cir. 1993)).

8   Second, the length of the delay is weighed against the reasons for the delay, and the

9   defendant "must show that the delay 'offends those fundamental conceptions of justice which

10   lie at the base of our civil and political institutions.'" *Corona-Verbera*, 509 F.3d at 1112

11   (quoting *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989) (quotation marks and

12   citation omitted)). The second prong of the test applies only if the defendant has shown

13   actual prejudice.

14   **II.    Actual Prejudice.**

15   Defendant's motion identifies several categories of lost evidence that clearly fail the

16   actual prejudice requirement. These include an inability to locate former owners of

17   comprehensive outpatient rehabilitation facilities (CORFs), an inability to locate documents

18   such owners might have retained, an inability to locate attorneys and financial advisers of

19   former CORF owners, and a general dimming of memories for the many witnesses to be

20   called at trial. In his reply memorandum, Defendant also notes that he discarded several

21   boxes of documents after he spoke with the Government's lead lawyer about his possible

22   indictment but before the indictment was actually issued. Defendant makes no attempt to

23   identify the contents of these boxes.

24   This evidence falls into the realm of speculation. Defendants fail to demonstrate what

25   the allegedly lost witnesses, documents, and memories would show and exactly how the loss

26   of this evidence would be prejudicial. *Barken*, 412 F.3d at 1134. "Generalized assertions

27   of the loss of memory, witnesses or evidence are insufficient to establish actual prejudice."

28   *Manning*, 56 F.3d at 1194.

1       Defendant has identified another category of evidence, however, that gives the Court

2   pause.  The Government charges Defendant with having made misrepresentation about the

3   viability of the CORFs his company was selling, and with having failed to disclose that

4   CORF owners he used as favorable references for potential customers were in fact paid by

5   Defendant's company to act as references.  Defendant maintains that he created and retained

6   a series of binders that identified individuals who attended his sales seminars.  The binders

7   also included the names of some lawyers and accountants who did due diligence for potential

8   customers.  Even more importantly, Mr. Goldfarb testified at the hearing that these binders

9   contained his notes of representations made to these individuals, including his disclosures

10  that the favorable CORF references were paid to act as references.

11      Mr. Goldfarb testified that the binders were maintained in his home office and were

12  picked up by a Dr. Ozalan and taken to co-defendant Richard Ross in early 2003, where they

13  reportedly were left at the Scottsdale office of Defendant's company.  Defendant Goldfarb

14  has not seen them since.

15      The binders, if accurately described by Mr. Goldfarb, would be important to the

16  defense of this case.  They would identify individuals who attended the seminars and could

17  testify about what was said – individuals who did not lose money by buying CORFs and who

18  therefore would have less motive to favor the Government's case.  They also reportedly

19  would contain contemporaneous notes showing that Defendant did not make the

20  misrepresentations alleged in the indictment.  Defendant testified at the hearing that the

21  binders, if found, would "obliterate" the Government's case.

22      The Court, however, finds several reasons to doubt the veracity of Defendant's

23  assertions about the probative value of the binders.

24      First, Mr. Goldfarb and many of the other defendants in this case were named in civil

25  lawsuits arising out of the failure of their business.  These suits alleged fraud in the sale of

26  the CORFs.  The binders, it would seem, would have been just as probative of fraud in the

27  civil suits as they would be in this case, and yet Mr. Goldfarb could not say whether the

28  binders were ever produced or relied upon in the civil suits.  His counsel asserted that he

1   spoke with one law firm that represented plaintiffs in the civil suits, but not that he contacted

2   a separate law firm that represented civil plaintiffs.  Nor did Mr. Goldfarb's counsel speak

3   with any defense lawyers from the civil cases.  If the binders were as pivotal as now

4   suggested, the Court believes they would have taken center stage in the civil cases, and yet

5   nobody in this case can confirm that they were ever mentioned in those cases.

6          Second, Mr. Goldfarb asserts that the documents were last in the possession of co-

7   defendant Richard Ross.  He argued during the hearing that Mr. Ross was not available to

8   be interviewed because of his cooperation agreement with the Government.  But Mr. Ross

9   was Mr. Goldfarb's co-defendant for more than one year before he began cooperating with

10  the Government, and yet Mr. Goldfarb was unable to describe any significant efforts he made

11  to determine what Mr. Ross knew of the binders' location.  His counsel stated that a general

12  request for the documents was made of Mr. Ross's lawyer – a request to which the lawyer

13  never responded.  Again, if the binders were as critical as Defendant now contends, the Court

14  believes Defendant and his counsel would have moved heaven and earth to locate them

15  through Mr. Ross.

16         Third, Defendant asserts that he first spoke with the prosecutor about the possibility

17  of an indictment at least two years before the indictment was issued.  And yet Mr. Goldfarb

18  describes no efforts he made during this two-year period to locate the binders.  Surely an

19  individual facing a possible federal indictment would make significant efforts to locate

20  documents he believed would prevent the indictment from issuing.  This two-year period also

21  appears to coincide with at least some of the civil litigation where the binders, again, would

22  have been critical evidence.

23         Fourth, the Court finds reason to doubt Defendant's corroborating evidence.

24  Defendant provided the Court with a transcript of an interview from a Mr. Lisenby who

25  attended a 2001 CORF sales seminar put on by Defendant and his associates.  Dkt. #599-3.

26  The transcript suggests that Defendant's representations at the seminar were quite different

27  from those described in the indictment.  At the evidentiary hearing, however, a Government

28  agent testified that she contacted Mr. Lisenby and that he twice refused to meet with her or

be served with a subpoena.  The Government also proffered that Mr. Lisenby's former wife said he never mentioned the seminar to her and would not have had the financial wherewithal in 2001 to invest in a CORF.

Fifth, Defendant did not present evidence that the binders were lost as a result of the Government's delay.  He contends that he last saw them when they were provided to Mr. Ross in 2003, but he agrees that the records of his business passed through a bankruptcy and a series of civil lawsuits before the indictment was issued.  The Government denies – without meaningful contradiction by Defendant – that the binders were ever in its possession or control.  Given the fact that the binders apparently vanished in 2003 and were not used in the civil suits then pending, Defendant has provided no basis for concluding that the binders would have been available had he been indicted earlier.

Sixth, in an effort to ameliorate any remaining prejudice from the lack of the binders, the Court has ordered the prosecutor, by the close of business on October 9, 2008, to provide Defendant's counsel with any and all information the Government possesses concerning the binders.  The Government avowed that it does not know where they are located, but it does have some information about who may last have seen them in 2003.  In another order dealing with a motion to dismiss for prosecutorial misconduct, the Court lifted any restriction on Defendant's ability to talk to cooperating co-defendants.  Defendant thus can approach Mr. Ross and other co-defendants to obtain information they may have about the fate of the binders.  The Court continued the trial in this matter one week to afford Defendant time to follow up on any leads.

The Court concludes that Defendant has failed to carry his heavy burden of showing actual, non-speculative prejudice from the Government's delay.  As noted above, the second prong of the Ninth Circuit's test – the reasons for the delay – applies only if the defendant has demonstrated such prejudice.[1]

---

[1]The Court notes that if it were to reach the reasons for the delay, it would not find a due process violation.  The prosecutor provided a description of the case history at the

1    **IT IS ORDERED** that Defendant's Motion to Dismiss for Prejudicial Pre-indictment

2    Delay (Dkt. #531) is **denied**.

3    DATED this 10th day of October, 2008.

4

5

6

7    _____
     David G. Campbell
8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    hearing on October 8, 2008.  The Court found no reason to conclude that the indictment in

27    this case was delayed in order to gain a tactical advantage over Defendant or otherwise
      hamper his defense. *See United States v. Lovasco*, 411 U.S. 783, 795 (1977); *United States*

28    *v. Marion*, 404 U.S. 307, 324 (1971).